# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIANNA MARIA HIDALGO, | Case No. 1:12-cv-00783-SAB |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 19, 20, 21) |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Rianna Maria Hidalgo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from obesity, degenerative disc disease of the lumbar spine, and anxiety disorder with obsessive-compulsive disorder. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted in part and denied in part.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 9, 24.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on January 22, 2008, and a Title XVI application for supplemental security income on July 17, 2008. (AR 17.) Plaintiff's applications were initially denied on September 11, 2008, and denied upon reconsideration on November 21, 2008. (AR 105-108; 112-117.) Plaintiff requested and received a hearing before Administrative Law Judge Nancy Lisewski ("the ALJ"). Plaintiff appeared for a hearing on July 28, 2010 which was deferred while Plaintiff obtained counsel. (AR 65-70.) A second hearing, at which Plaintiff appeared with counsel, took place on November 19, 2010. (AR 71-100.) On January 7, 2011, the ALJ found that Plaintiff was not disabled. (AR 14-27.) The Appeals Council denied Plaintiff's request for review on December 2, 2011. (AR 4-6.)

**A. Hearing Testimony**

1. <u>Plaintiff's Testimony</u>

Plaintiff testified at the hearing on November 19, 2010. (AR 77-90.) At the time of the hearing Plaintiff was 32 years old, was 5 foot 7 inches tall, and weighed 299 pounds. (AR 77, 79.) Plaintiff has been overweight most of her life and feels that it makes her back pain worse. (AR 85.) Plaintiff has obsessive compulsive disorder ("OCD") which causes her do certain rituals every day. (AR 85.) Some issues cause her anxiety, for example the number six or nine cause her to feel as if something bad is going to happen. (AR 85-86.) When Plaintiff uses the restroom she has to wash her hands three times. (AR 86.)

In 2008 and 2009, when Plaintiff's anxiety and OCD were really bad she was pulling her hair out until she was bald on the top of her head. (AR 86-87.) When Plaintiff started attending school it took her mind off of it and she still has the urge, but she tries to control it. (AR 87.)

Plaintiff lives with her grandparents, parents, and eight year old son. (AR 77.) Plaintiff is able to drive and drives about twenty-five percent of the time. (AR 81.) Plaintiff last worked on June 14, 2007, when she left work because she felt like she was having a mental breakdown and was going to harm someone. (AR 77, 82.) Plaintiff was on state disability for one year and

1 | has been on Cal Works since 2008.  (AR 78.)

2 | Plaintiff was receiving Mental Health treatment and individual counseling at Kaiser in their outpatient program.  (AR 82.)  When Plaintiff has a problem with her anxiety or OCD she does not want to talk to anyone and it lasts about two to three days.  (AR 89.)  She only talks to people when she has to and isolates herself.  (AR 89.)

Plaintiff started having back problems when she was sixteen and they have gotten worse and worse over the years.  (AR 82.)  Plaintiff had to miss about three months at a time when she was working due to her back problems.  (AR 83.)  Plaintiff can stand for ten to fifteen minutes, sit for forty-five minutes to an hour, and walk for about a block and a half, seven to ten minutes.  (AR 83.)  Plaintiff can lift five to ten pounds on a regular basis.  (AR 87.)  About every three months, Plaintiff's back stiffens up and locks.  (AR 87.)  She has to brace herself to straighten up and is unable to sit straight down.  (AR 87.)  It will last for two to three weeks.  (AR 88.)  Plaintiff stated that she is in pain every day, physically and mentally, and has a lot of anxiety and mental anguish.  (AR 89.)  Sometimes there is so much on her mind that she has a breakdown and cannot make any progress.  (AR 89-90.)

Plaintiff was told that some of the discs in her back are bulging out and hitting a nerve which is causing pain down both of her legs and numbness.  (AR 84.)  Plaintiff had seizures from the time that she was one and a half years old until she was twenty-five.  (AR 84.)  Plaintiff would fall once or twice a year due to the seizures, which is the only traumatic thing she can think of that could have caused her back injury.  (AR 84.)  Plaintiff was referred to a pain specialist by her general doctor and was taking Norco, Gabapentin, Ativan, and Omeprazole.  (AR 80.)

Plaintiff has been attending school since the spring of 2009, and is expected to receive her Associate of Arts degree in Business Administration in the spring of 2011.  (AR 78.)  Plaintiff is taking fourteen units: two classes that she attends and two on-line classes.  (AR 80.)  Plaintiff is on campus attending classes eight hours per week.  (AR 80.)  Plaintiff sits at the back of the class so she can get up and move when she needs to stretch.  (AR 83.)  Plaintiff receives mostly A's in her classes.  (AR 81.)  Plaintiff is able to do well in school because her parents help her around that house, cooking, cleaning, doing laundry, and taking care of her son.  (AR 88.)  Plaintiff feels

1  her OCD helps her to do well in school because it causes her to spend four to five hours preparing
2  for a test where someone else would only spend two to three hours preparing.  (AR 88.)  Plaintiff
3  will study however she is able to get comfortable; propped up in bed, laying down, or sitting up.
4  (AR 88.)  Plaintiff hopes to continue on to pursue a four year degree if her back is not an issue.
5  (AR 79.)

### 2. Maria Hidalgo Testimony

Plaintiff's mother, Maria Hidalgo, also testified at the hearing.  (AR 90-94.)  Ms. Hidalgo testified that Plaintiff has had back problems for as long as she can remember.  (AR 91.) Plaintiff's back problems have increased over the past few years until she is always in pain.  (AR 91.)  There are some periods of time when the pain is excruciating and Ms. Hidalgo has to help Plaintiff get out of bed.  (AR 91.)  On her bad days, it is hard to watch Plaintiff because it takes her awhile just to get out of bed, stand up, and start walking.  (AR 91-92.)  Sometimes the first step is enough to make her bend over if she has not warmed up enough.  (AR 92.)

Ms. Hidalgo helps Plaintiff with the laundry and moving.  (AR 92.)  When Plaintiff is having a bad day, Ms. Hidalgo helps Plaintiff put on her shoes because Plaintiff cannot bend over. (AR 92.)  Ms. Hidalgo takes care of Plaintiff's son on a regular basis.  She fixes his meals and bathes him.  (AR 92.)  Ms. Hidalgo does most of the cooking.  (AR 92.)  Ms. Hidalgo and her mother-in-law do the housework.  (AR 92.)

Plaintiff has problems with OCD every day.  (AR 91.)  Plaintiff has rituals that she needs to do before she can go out or she becomes anxious.  (AR 93.)  Plaintiff has a really bad bout of OCD where she pulled her hair out and she had to wear a scarf.  (AR 93.)

Plaintiff has always been a motivated person and it is hard to watch her be in pain because Plaintiff wants to do things.  (AR 92-93.)  Plaintiff loves her son dearly and she cannot do the things she loves to do with him, she is very limited in what she can do.  (AR 93.)  Plaintiff does her schoolwork, but it is hard for her not to do the things Plaintiff wants to do with her son and her everyday activities.  (AR 93.)

### 3. Vocational Expert Testimony

Mr. Dreparo, a vocational expert ("VE"), also testified at the hearing.  (AR 94-99.)  Mr.

Dreparo characterized Plaintiff's prior work as an accounting clerk, sedentary and skilled; general clerk, light and semi-skilled, sedentary as performed; and a still photographer, light and skilled. (AR 96.) The VE was presented with a hypothetical of an individual of Plaintiff's age, education, and work experience limited to light work; no ladders, ropes and scaffolds; frequent balancing; and all of the posturals occasionally. (AR 96.) The VE opined that this individual could do all of Plaintiff's past relevant work. (AR 96.)

The VE was presented with a second hypothetical of a person with the same qualifications, but limited to simple repetitive tasks, defined as SVP one and two jobs, and limited social contact. (AR 96.) The VE opined that there would be jobs available for this individual such as a bottle packer, light and unskilled, 8,850 or so jobs nationally; housekeeping cleaner, light and unskilled 237,000 jobs nationally and 25,000 in California; and sub assembler, light and unskilled, 10,000 jobs nationally and 1,000 in California. (AR 97-98.)

The VE was then presented with a hypothetical of an individual who would be off task thirty percent of the day or more. (AR 98.) The VE opined that there would be no jobs available for this individual. (AR 98.)

Plaintiff's counsel then presented a hypothetical in which the individual could not work three days per week due to extreme pain. (AR 99.) The VE opined that there would be no jobs available for this individual. (AR 99.)

**B.     ALJ Findings**

The ALJ found that Plaintiff had severe impairments of obesity, degenerative disc disease of the lumbar spine, and anxiety disorder with obsessive-compulsive disorder. (AR 19.) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 21.) Plaintiff has the residual functional capacity to perform light work, except that she can only frequently balance; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes and scaffolds; and is limited to simple, repetitive tasks with one to two step instructions and limited social contact. (AR 23.) There are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 26.)

///

## III.

## LEGAL STANDARD

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by not giving appropriate weight the opinions of Plaintiff's treating physicians concerning her disabilities; finding that Plaintiff's impairments are not disabling; and failing to consider the lay testimony of Plaintiff's mother. (Appellant's Opening Brief 3, ECF No. 19.)

**A.   The ALJ Erred by Failing to Consider Dr. Bryan's Opinion**

Plaintiff contends that the ALJ should have given controlling weight to the opinion of Dr.

6

1 Bryan, who is Board Certified in both Neurology and Pain Medicine.  Plaintiff argues that the
2 ALJ erred in giving controlling weight to the opinion of Dr. Nowlan who did not have Plaintiff's
3 MRI or CAT scan to review and who is not a specialist.  (ECF No. 19 at 4-5.)

4 Defendant responds that the ALJ properly gave little weight to the opinion of Dr. Bryan as
5 he provided a conclusion of disability with little explanation that was inconsistent with the other
6 evidence in the record.  Further, Dr. Bryan's conclusion that Plaintiff was unable to work is
7 inconsistent with the conservative treatment provided and with Plaintiff's own statements that she
8 was walking two miles a day.  (Def.'s Opp. to Pl.'s Opening Brief 9-10, ECF No. 20.)  Dr.
9 Nowlan based his opinion on the results of his examination of Plaintiff, and it does not appear
10 that Plaintiff submitted any treatment records prior to Dr. Nowlan's examination.  Defendant
11 contends that the ALJ was able to evaluate the evidence and make a determination on Plaintiff's
12 claim and did not have any obligation to further develop the record.  (ECF No. 20 at 11.)

13 The ALJ is not bound by a treating physician's opinion that a claimant is disabled as the
14 ultimate question of disability is reserved for the Commissioner.  Tommasetti v. Astrue, 533 F.3d
15 1035, 1041 (9th Cir. 2008); 20 C.F.R. § 404.1527(d).  However, the ALJ must provide specific
16 and legitimate reasons for rejecting the opinion of the treating physician.  Lester, 81 F.3d at 830-
17 31.  Treating physician opinions are entitled to deference and are weighed by the length of the
18 treatment relationship; frequency of examination; nature and extent of treatment relationship;
19 supportability of diagnosis, consistency of the opinion with the record as a whole; specialization,
20 when the medical issue is related to the specialty; and other factors that tend to support or
21 contradict the opinion.  See Edlund v. Massanari, 253 F.3d 1152, 1157 n.6 (9th Cir. 2001); 20
22 C.F.R. §§ 404.1527(c), 416.927(c).

23 Plaintiff was treated by Apex Medical Group from November 4, 2008 through November
24 21, 2010.  (AR 456-73.)  Prior to November 24, 2009, the few notations of pain in the record
25 show that Plaintiff's pain level was reported as 3-4 out of 10.  (463, 464, 465, 470.)  On
26 November 24, 2009, Plaintiff stated that she had been having bad pain in her back for one week.
27 (AR 461.)  On December 23, 2009, Plaintiff complained of pain in her leg that had been very bad
28 for the past two weeks, with lots of pain and spasms.  (AR 459.)

The ALJ found Plaintiff's back condition to not be so debilitating as to limit her capacity to work. (AR 24.) The ALJ considered that Plaintiff had provided little medical evidence to show how her alleged physical impairments limit her ability to work. (AR 24.) Plaintiff's CT of the lumbar spine in January 2010 showed "degenerative disk disease, but failed to reveal any spondylolisthesis, canal stenosis or nerve issues." (AR 24.) The ALJ also considered Plaintiff's abilities during the examination with Dr. Nowlan where she "exhibited normal coordination, station and gait, could walk on her heels and toes, exhibited a negative straight leg-raising test in the seated and supine positions, showed no pain with any range of motion and exhibited normal sensation." (AR 24.)

Plaintiff argues that Dr. Nowlan did not have access to the CAT scan or MRI at the time of his examination of Plaintiff. However, Plaintiff did not receive a CAT scan or MRI until after her back pain became worse and she was referred for pain management. This was after her consultative examination with Dr. Nowlan.

There is substantial evidence to support the ALJ's determination that the medical record does not support Plaintiff's complaints that she had debilitating back pain prior to November 2009. However, in November 2009, the record reflects that Plaintiff began complaining of significant back pain and she was referred to Dr. Bryan for pain management. The ALJ gave little weight to the opinion of Dr. Bryan because "it is vague, lacks a medical explanation, is based upon a limited history with the claimant, is not consistent with the objective medical evidence and is an opinion that is reserved for the Commissioner." (AR 25.)

The ALJ stated that "most of Dr. Bryan's notes are illegible and therefore do not provide a substantive medical reasoning for his prognosis." (AR 25.) Plaintiff argues that the report itself was clear and easy to read, however, neither party cite to Dr. Bryan's treatment records. Dr. Bryan's records of each visit are very brief. They contain Plaintiff's subjective complaints, few objective findings, and state the treatment given. While the records are difficult to read, they are not completely illegible.

In determining the weight to be given to Dr. Bryan's opinion, the ALJ considered that Dr. Bryant only saw Plaintiff approximately five times from December 2009 through October 2010.

(AR 25.) On December 28, 2009, Plaintiff was seen by Dr. Bryan and received a Kenalog injection. (AR 454.) Dr. Bryan saw Plaintiff on February 1, 2010, and noted that the shots helped for a while. (AR 451.) On June 4, 2010, Dr. Bryan noted that Plaintiff had received an MRI and was able to function well on Norco. (AR 451.) On July 6, 2010, Plaintiff received Kenalog injections. (AR 450.) On October 18, 2010, Dr. Bryan wrote the letter at issue in this appeal. (AR 449.)

Based upon a review of these records, it is unclear to the Court why Plaintiff fails to argue that the ALJ erred by finding that Plaintiff did not seek injections for her complaints of pain. In making the determination regarding Plaintiff's complaints of back pain, the ALJ found it noteworthy that Plaintiff only sought pharmaceutical treatment for her back pain since November 2008, and there are "no showings of other treatment such as physical therapy or injections indicating that her alleged radiculopathy is not as debilitating as she has claimed." (AR 21.) From November 2008 to October 2010 Plaintiff had multiple visits at Apex Medical Group for what appear to be medication refills. (AR 20.) The ALJ further found that the claimant has only provided medical records showing that she sought pharmaceutical treatment for the greater part of 2009 with no showing that she has needed or sought other treatment such as physical therapy or injections." (AR 24.)

In the letter dated October 18, 2010, Dr. Bryan stated that Plaintiff "has chronic low back pain in both legs." (AR 449.) Plaintiff has moderate relief on her medication. Plaintiff's back pain is caused by "marked degeneration with encroachment of the lateral recesses at L4-5 and marked degeneration of the L5-S1 with severe facet arthropathy." (AR 449.) Dr. Bryan opined that, due to the extent of her disease, Plaintiff is not a candidate for surgery. Dr. Bryan stated that Plaintiff tells him she is unable to do any housework due to her low back pain and lies down most of the time. (AR 449.) Dr. Bryan states that "Plaintiff is unemployable and will not be able to work in any situation. [He thinks] she will remain like this for the rest of her life and most likely her back will get worse as time passes." (AR 449.)

While the ALJ is not bound on the ultimate issue of disability, he must provide specific and legitimate reasons for rejecting the opinion of the treating physician. Lester, 81 F.3d at 830-

31. In this instance, the ALJ did not consider the opinion of the Dr. Bryan because she found the notes to be illegible and therefore they did not support the opinion. The ALJ erred by failing to consider the treatment records of Dr. Bryan. However, the treatment records of Dr. Bryan indicate that Plaintiff responded to the treatment and was able to function well, indicating that her back pain may not have been as debilitating as she claimed. Additionally, the opinion appears to be based on Plaintiff's reports of her ability which the ALJ found to be not credible to the extent they are inconsistent with the functional capacity assessment. Accordingly, this action shall be remanded for the ALJ to consider the 2010 treatment records of Dr. Bryan

### B. The ALJ Erred by Failing to Address the Testimony of Plaintiff's Mother

Although Plaintiff's mother testified at the hearing, the opinion fails to address this testimony. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. § 404.1513(d)(4). "Lay witness testimony is competent evidence and cannot be disregarded without comment." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony. Stout, 454 F.3d at 1056.

Because the ALJ did not address the lay witness testimony that supported Plaintiff's assertions of disability, this action shall be remanded for further consideration of the lay witness testimony.

### C. The ALJ Did Not Err in Considering Plaintiff's Obesity

Plaintiff argues that the ALJ erred by failing to find that Plaintiff's obesity, in combination with her degenerative disk disease met or equaled a listed impairment.

The ALJ specifically considered Plaintiff's obesity in combination with Plaintiff's medical complaints in determining that she is not disabled under the Social Security Act. (AR 20, 21-22.) In 1999, obesity was deleted from the listing of impairments in 20 CFR, subpart P, appendix 1 ("the listings") because it did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity. Social Security Ruling 02-1p

(2002), 2002 WL 34686281 at *1. However, obesity is considered a medically determinable impairment and the ALJ is to consider that the combined effects of obesity with other impairments can be greater than the effects of each impairment considered separately. Id. Obesity by itself or in combination with other impairments is severe when it significantly limits the claimant's ability to do basic work activity. Id. at *4.

There is equivalence with the listing when the combination of impairments is equivalent in severity to the listed impairment. Id. at *5. The examiner is not to make assumptions about the severity or functional effects of obesity in combination with other impairments and each case is evaluated on the record. Id. at *6.

Plaintiff claims that Plaintiff's obesity in combination with her degenerative disk disease equals the Musculoskeletal Listing 1.00B.2.b.(2).[2] This section states:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Prior to November 2009, there is no evidence in the record that Plaintiff's medical conditions alone or in combination affected Plaintiff's ability to ambulate effectively. In fact, Plaintiff stated that she was walking two miles per day. (AR 420.) Further, at the hearing Plaintiff testified that she was attending school eight hours a week, without assistance, and sits in the back of the room so that she can get up and move around when she needs to stretch and can walk a block and a half or seven to ten minutes. (AR 80-81, 83-84.) Substantial evidence supports that ALJ's finding that Plaintiff's impairments alone or in combination do not meet or equal the Musculoskeletal Listing.

---

[2] Plaintiff references 101B.2.b.(2), however no such section exists in the listings. Therefore, Court assumes that Plaintiff meant to reference 100B.2.b(2).

11

**D.     The ALJ Did Not Err in Finding That Plaintiff's Mental Impairments Were Not Disabling**

Plaintiff argues that the ALJ erred in finding that Plaintiff's impairments were not disabling. As discussed above, this action shall be remanded for the ALJ to consider Plaintiff's claim that she was disabled due to back pain. Accordingly, the Court shall consider whether the ALJ erred in finding that Plaintiff's mental disabilities were not disabling.[3]

The ALJ found that Plaintiff's anxiety disorder with obsessive-compulsive disorder was a severe impairment that had more than a minimal effect on Plaintiff's ability to find and sustain work. (AR 20.) Plaintiff alleged several memory impairments, such as short-term memory loss, loss of concentration, trichotillomania, depression, bipolar disorder and panic disorder with agoraphobia, and the ALJ referenced specific evidence in finding that her trichotillomania, depression, bipolar disorder and panic disorder are peripheral to her anxiety disorder and are not severe impairments. (AR 21.)

Plaintiff began attending classes at the community college in the spring of 2009 and maintained a fulltime schedule with excellent grades and attendance. (AR 395.) Plaintiff argues that the ALJ misstated how many college units Plaintiff was taking, however, the fact that Plaintiff is taking fourteen units, attending classes eight hours per week, and receiving mostly As in her classes is substantial evidence to support the ALJ's finding.

The ALJ also considered the notes of Plaintiff's therapists and that Plaintiff stated her last episode of trichotillomania was in 2008. (AR 21.) On November 6, 2007, Plaintiff reported that she was no longer pulling her hair out. (AR 290-92.) On August 9, 2010, Plaintiff reported that she was starting to pull her hair again and was returning to the clinic. (AR 437.) However, Plaintiff returned for therapy and the record does not reflect any aggravation of her trichotillomania.

---

[3] Although the ALJ did not discuss the lay witness testimony, the Court finds that such error is harmless in regards to Plaintiff's mental conditions. Plaintiff's mother's testimony as it relates to her mental conditions was that "she had problems with OCD", (AR 91), she is anxious if she is unable to follow her rituals and she had bad bouts where she was pulling her hair out, (AR 93). This testimony is not inconsistent with the ALJ's findings that Plaintiff's anxiety disorder with obsessive-compulsive disorder was a severe impairment that had more than a minimal effect on Plaintiff's ability to find and sustain work, (AR 20), or that her last episode of trichotillomania was in 2008, (AR 21).

The ALJ also considered that during her therapy sessions in 2009, Plaintiff consistently presented with a good mood and normal affect.  On November 6, 2007, Plaintiff reported that her anxiety, depression, and OCD behaviors were decreasing, which she attributed to cannabis use.  (AR 286-88.)   On October 16, 2008, Plaintiff's mood was depressed and anxious, but she reported that she was taking Ativan which helped with her symptoms.  (AR 397-99.)

On January 9, 2009, Plaintiff's mood was reported as normal.  (AR 408-09.)  On February 4, 2009, Plaintiff's mood was upbeat and she was less anxious and obsessive.  (AR 427.)  On February 6, 2009, Plaintiff reported that she was feeling better on Zoloft.  (AR 470.)  Plaintiff stated that she was doing well in school and her depression was "manageable" on May 1, 2009.  (AR 422.)  On June 11, 2009, Plaintiff's mood was reported as stable.  (AR 420.)  On August 29, 2009, Plaintiff reported that she was "not very depressed" overall.  (AR 418.)  In October and November 2009, Plaintiff presented in a good mood.  (AR 415, 414, 412.)

On August 9, 2010, Plaintiff was found to have normal mental status and her depression was mild with bouts of anxiety/panic.  (AR 438.)  On August 24, 2010, the assessment noted that Plaintiff stated her strengths were that she was organized, had a good memory, and was a fast learner.  (AR 436.)

Substantial evidence in the record supports the ALJ's finding that Plaintiff's mental impairments do not preclude her from performing light work.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining that Plaintiff's impairments met or equaled the Listing, that Plaintiff's mental impairments do not preclude her from light work, and that the medical record does not support Plaintiff's complaints that she had debilitating back pain prior to November 2009.  However, the ALJ erred in failing to consider the 2010 treatment records of Dr. Bryan and in failing to address the lay witness testimony during the November 19, 2010 hearing.  Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that this action be back to the Commissioner for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **September 10, 2013**

UNITED STATES MAGISTRATE JUDGE